[Civ. No. 7328.   Third Dist.   June 10, 1947.]

J. W. KAUFMAN, Respondent, v. MILTON P. HANEY, Appellant.

Manwell & Manwell for Appellant.

Rich, Weiss, Carlin & Fuidge for Respondent.

SCHOTTKY, J. pro tem.—Plaintiff and respondent brought this action as a real estate broker to recover from defendant a commission of $3,750. The complaint alleged that prior to September 8, 1945, defendant orally authorized plaintiff and employed him to procure a purchaser for real estate owned by the defendant; that on September 8, 1945, plaintiff procured two persons to jointly purchase the property for $75,000 and on that date, the defendant in writing agreed to sell the property at that price and to pay plaintiff a commission of five per cent or $3,750; that said purchasers were then and there willing, able and ready to complete the purchase; that defendant refused to sell the property to the purchasers; that by reason of the foregoing plaintiff has been damaged in the sum of $3,750.

The answer, after denying the said agreement, alleged that defendant and one Cordie Haney, his wife, were the owners

of the property as joint tenants; that at the time mentioned in the complaint, defendant did not have power or authority to sell more than an undivided one-half interest; that said purchasers refused to purchase defendant's one-half interest which he was ready, willing and able to sell to them.

The trial court found in accordance with the allegations of the complaint, and this appeal is from the judgment for $3,750 entered in accordance with said findings.

Respondent is a licensed real estate broker, and appellant and his wife, Cordie Haney, are the owners, in joint tenancy of an apartment house in Marysville. Some months prior to September 8th, respondent and appellant met on a street in Marysville at which time appellant informed respondent that he might be interested in a sale of the apartment building. He did not want to put the sale out on a written contract but assured respondent that he woud be protected in his commission. On this and numerous other occasions appellant told respondent that his wife was unhappy in the apartment house, that she did not want to live there any more, that she was working too hard, that they were planning on building a private type of residence and that in order to keep her happy he had consented to her request to sell the property.

Some time later respondent interested a man named Yasbeck in the property at the price of $70,000, and Yasbeck and Kaufman, in company with appellant viewed the property. At this time Mrs. Haney was in Arizona. Thereafter appellant told respondent that he had telephoned Mrs. Haney in Arizona, that she was delighted with the sale and wanted it closed. At a later date appellant informed respondent that he had looked into the income tax angle on the sale and decided he and his wife could not afford to sell it at the price Yasbeck was willing to pay. This terminated the Yasbeck deal.

Thereafter respondent procured Charles M. Burchell and Kenneth Dempsey to purchase the property at $75,000. Appellant had prior thereto informed respondent that this figure would be acceptable to his wife and him. The proposed purchasers and respondent met with appellant at the apartment building and the purchasers were shown the premises by appellant. The property and the price being agreeable to them, the contract for the purchase of the property, on the California Standard Agreement form, was prepared by respondent signed by him and the two purchasers, and in this

agreement appellant likewise signed the agreement to pay to respondent five per cent of the sale price of $75,000.

The agreement was deposited with the Title Company, together with the check of the buyers in the sum of $2,000 as required by the contract. At this time Mrs. Haney was still in Arizona. At the time of the trial appellant, under section 2055 of the Code of Civil Procedure, testified that it definitely was understood that the same was conditioned on the approval of Mrs. Haney.

Respondent testified, that to the contrary, nothing was ever said by appellant, directly or indirectly, from which it could be inferred that the latter would have to consult his wife, and in this he was corroborated by both buyers.

Mrs. Haney returned to California shortly afterward and refused to consent to the sale or to sign the necessary instruments unless the price was increased or appellant would agree to divide his commission with her. When it appeared that the sale could not be consummated because of Mrs. Haney's refusal to join in the transaction, respondent commenced action against appellant to recover the commission agreed upon.

As grounds for a reversal of the judgment appellant urges: (1) That because the property was held in joint tenancy, appellant Haney was without authority to bind Mrs. Haney or make himself liable for the commission, and (2) that the action was premature.

In an opinion filed by him the learned trial judge stated:

"The main issue presents primarily a question of law and that is whether or not one co-tenant can be held liable upon his agreement to pay a real estate broker's commission where the sale is not consummated by reason of his co-tenant refusing to join in executing the deed.

"The authorities uniformly hold that where a husband contracts with a broker to sell real property and the broker procures a buyer ready, willing and able to pay the purchase price upon the terms specified, the broker has performed his part of the agreement and his claim to the commission may not be denied because the wife refuses to join in the conveyance. While the rule generally is conceded, the defendant urges that the property here involved, being held in joint tenancy, the rule is not applicable because of the limitations incident to such joint ownership. We find no authority sustaining that point insofar as the question of title is concerned.

While it is true that one co-tenant cannot contract as to a co-tenant's interest but may convey his individual interest to a stranger who then becomes a tenant in common with the other owner, nevertheless, in none of the cases cited, or have we been able to find anywhere it appears that the question of title was deemed an element or even a necessary requisite to a recovery by a plaintiff in any such action.

"The evidence here discloses that the defendant undertook to negotiate a sale of the entire property through plaintiff, as broker, and agreed to sell at the price and upon the terms specified in the agreement, and further agreed therein to pay the plaintiff his commission, which is the subject of this suit. The action being between the plaintiff and the defendant only and not for specific performance, which, of course, could not prevail as to the joint tenant, must necessarily be determined upon the basis of the contract as executed. It is contended that the action is premature in that the defendant was not afforded a reasonable time to perfect the title before the deposit was withdrawn and has never refused to comply with the terms of the contract. This contention cannot be sustained by reason of what has already been said, i. e. to entitle plaintiff to recover his commission under such an agreement it is only necessary to show that pursuant to his employment he procured purchasers ready, willing and able to purchase the property at the price and upon the terms specified in the agreement. This he did as evidenced by the agreement itself. He, therefore, has nothing to do with title or ownership and his right to compensation, insofar as the contract is concerned, would not in any way depend upon the nature of the title. While there appears to be a conflict in the testimony as to whether or not the transaction was conditional upon approval of the joint tenant, the preponderance of the evidence as testified to by all of plaintiff's witnesses indicates that such was not the case."

The foregoing opinion of the trial judge is fully sustained by the record and by the authorities.

In the case of *Traxler* v. *Katz*, 116 Cal.App. 226 [2 P.2d 553], a husband had signed an agreement to pay a broker's commission but his wife had not signed. In affirming a judgment for the recovery of the commission from the husband, the court stated, at page 230:

"As shown above, the plaintiff held the written authorization of Mr. McLeran [defendant's testator] empowering him

to negotiate the exchange. *If Mr. McLeran did not own the entire fee and if his wife later refused to join in executing a deed to Mr. Ehrlick, such facts did not constitute a defense.* (4 Cal.Jr. 596-597.) As the trade was not actually carried out the defendant asserts it was not 'consummated' within the terms of the contract and Mr. Ehrlick never became liable and therefore she is not liable. Under the facts the point may not be sustained." (Italics ours.)

In *Russell* v. *Ramm,* 200 Cal. 348, the court said, at page 366 [254 P. 532]:

"It follows that the fact that Ramm's wife refused to join her husband in the transfer of the properties to the Moores does not in the least affect or impair the right of the plaintiffs to the compensation which Ramm agreed to pay them for securing purchasers of the properties. *Indeed, it is the general rule that the refusal of the wife of the owner to join in the conveyance of the property to the proposed vendee does not, itself, in a case of this character, operate to deprive the broker of his right to compensation.* (See *Justy* v. *Erro,* 16 Cal.App. 519, 522 [117 P. 575] and cases therein cited; *Farrington* v. *McClellan,* 26 Cal.App. 375, 383 [146 P. 1051]; *Goodrich* v. *Turney,* 44 Cal.App. 516 [186 P. 806]; *Johnson* v. *Krier,* 59 Cal.App. 330, 333 [210 P. 966]; *Freeman* v. *Creelman,* 60 Cal.App. 14, 22-23 [212 P. 56].)'' (Italics ours.)

In *McDonald* v. *Bernard,* 87 Cal.App. 717 [262 P. 430], in which a judgment for a broker's commission was affirmed although defendant's wife recorded a declaration of homestead which defeated the deal, the court said at page 718:

"The rule of law involved is simple and well settled. The appellant knew of his wife's objection to the exchange when he employed the brokers to procure an acceptance from the owner of the other piece of property. It may be that he thought he could satisfy her objections if he had the exchange contract signed, or that he would complete the exchange without her consent, or that she might change her mind, but these are matters with which the brokers were not concerned. They were employed to procure the acceptance of the other owner and they performed that service in strict accordance with their contract.

"When a broker is employed to procure the acceptance of a proposition to exchange specified properties his right to compensation does not depend upon the validity of the title. (*Gonzales* v. *Broad,* 57 Cal. 224, 226.) The refusal of the

wife to join her husband in a conveyance of community property does not affect the liability of the husband on his individual contract with a broker to procure a purchaser. (*Goodrich* v. *Turney,* 44 Cal.App. 516, 520 [186 P. 806]; *Johnson* v. *Krier,* 59 Cal.App. 330-333 [210 P. 966]; *Russell* v. *Ramm,* 200 Cal. 348 [254 P. 532].) These cases merely follow the general rule that a party may contract with a broker to procure a suitable purchaser for property which he does not own and his subsequent failure to perfect a title which would enable him to complete a sale does not affect his liability to the broker. (*Martin* v. *Ede,* 103 Cal. 157-161 [37 P. 199], and cases cited.)''

See, also, *Purcell* v. *Firth,* 175 Cal. 746 [167 P. 379]; *Levy* v. *Dusenbery,* 32 Cal.App. 411 [163 P. 231]; *Sanchez* v. *Yorba,* 8 Cal.App. 490 [97 P. 205].

The foregoing authorities clearly show that the law in California is against the contention of appellant that because the property was held in joint tenancy he was without authority to make himself liable for the commission.

▌ Appellant's second contention that the action was premature is without merit. When respondent produced purchasers who were ready, willing and able to buy the property in accordance with the terms of the commission contract signed by appellant, he was entitled to his commission; and under the authorities hereinbefore set forth his right to the commission could not be defeated by the refusal of Mrs. Haney to sign the necessary instruments to complete the transaction. The fact that the buyers, after vainly trying to complete the purchase, finally drew down their deposit could not release appellant from his obligation to pay the commission.

In view of the foregoing the judgment is affirmed.

Adams, P. J., and Thompson, J., concurred.